IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JESÚS IGLESIAS-VIERA,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CIVIL NO. 10-1212 (ADC)<br>Related to Criminal No. 07-488 (ADC) |

**REPORT AND RECOMMENDATION**

Pending before the court is petitioner Jesús Iglesias-Viera's ("Iglesias-Viera") motion under 28 U.S.C. §2255 to vacate, set aside or correct the sentenced imposed on him on April 3, 2009 (Docket Nos. 1; 1681 and 1725 in case 07-488 (ADC)).[1]  Respondent filed a response in opposition and petitioner filed a reply as well as a supplement to the reply.  (Docket Nos. 5, 10, 12).  Each of petitioner's arguments shall be addressed in turn.

**I.   Whether petitioner's base offense level should be recalculated using a one-to-one conversion ratio regarding cocaine base to cocaine**

For purposes of petitioner's guilty plea, the parties stipulated that he was accepting responsibility for at least five but less than fifteen kilograms of cocaine.  (Docket Nos. 1090 at 4; 1121 at 5; 1725 at 1 in case 07-488 (ADC); 2126 at 73 in case 07-488 (ADC)).  Therefore, petitioner's request is inapplicable in view of the fact that he was not sentenced for cocaine base ("crack"), but rather cocaine in its ordinary form.

**II.   Whether petitioner never received a copy of the indictment**

Iglesias-Viera claims that he was never provided with a copy of the indictment.  Even if

---

[1] Unless otherwise specified, all citations to the record are to the case at bar, that is 10-1212 (ADC).

we were to assume, *arguendo*, that at the initial appearance petitioner was not provided with a copy of the indictment, such defect, if it actually occurred, was eventually cured.  First, at the arraignment Iglesias-Viera waived the reading of the indictment.  (Docket No. 156 at 07-488 (ADC)).  If petitioner was as concerned as he claims now to be to have actual possession of a copy of the indictment, he could have requested a copy of the same at the arraignment and asked that it be read to him.  Instead, Iglesias-Viera proceeded to enter not-guilty pleas as to counts 1-7, 11, and 12.

Second, during the Federal Rule of Criminal Procedure 11 hearing, the court asked Iglesias-Viera whether he was aware of the charges in the indictment, to which he replied in the affirmative.  (Docket No. 2126 at 21 in case 07-488 (ADC)).  Third, during said hearing, the issue in controversy was addressed:

> THE COURT: Counsel Nieves Casas, have you given a copy of the indictment to your client?
>
> MR. NIEVES CASAS: Well, I have, my own copy, but I presume that, when he took his own copy, he kept it.  I suppose that he might have lost it.  But, however, we have seen my indictment in my possession, and we have thoroughly discussed it.
>
> THE COURT: And you have met with him and shown him with the indictment in your hands the counts in which he has been charged and translated it to him in Spanish those counts?
>
> MR. NIEVES CASAS: Not only that, Your Honor, but also the contents of the plea agreement which mentions the particular counts of the indictment.

(Docket No. 2126 at 22-23 in case 07-488 (ADC)).  Once this portion of the Rule 11 colloquy concluded, the court asked Iglesias-Viera again whether he had received a copy of the indictment, discussed it with his attorney, and understood his attorney's explanations as to what those charges

mean, to which he replied "yes". (Docket No. 2126 at 23 in case 07-488 (ADC)).Therefore, in light of the fact that petitioner eventually acknowledged that he had in fact received a copy of the indictment and that he was well aware of the contents of the indictment pending against him, Iglesias-Viera's argument regarding a copy of the indictment is untenable.[2]

### III.     Whether petitioner's guilty plea as to count seven was made under coercion or duress

Iglesias-Viera claims that his "plea of guilty to count seven of the indictment was merely a pro forms act committed under coersion [sic], and duress induced by defense counsel." (Docket No. 1 at 4). The evidence that transpired at the change of plea hearing, however, indicates otherwise. First, Iglesias-Viera informed at the change of plea hearing that he was satisfied with the services that his attorney had provided him. (Docket No. 2126 at 24 in case 07-488 (ADC)). Furthermore, at said hearing petitioner informed the court that he was not pleading guilty simply because somebody else was pleading guilty and that he had not been pressured by any co-defendant to enter a guilty plea. Id. at 54-55. In particular, the court asked Iglesias-Viera as follows:

> Q:    Do you voluntarily wish to enter a guilty plea as to counts one and seven of the indictment because you believe that you are guilty of said offenses?
>
> A:    Yes.

Id. at 56. Hence, petitioner's claim that his plea regarding count seven was made under coercion or duress lacks merit.

Furthermore, at the change of plea hearing petitioner, after listening to a summary of the allegations in count seven and indicating that he was pleading guilty to said count, acknowledged

---

[2] Assistant U.S. Attorney G. Andrew Massuco Lataif stated at the change of plea hearing that he "was present at the initial appearance and the arrangements [sic] where the defendants were given copies of the indictment so that they could review the copy of the indictment." (Docket No. 2126 in case 07-488 (ADC) at 22).

that he understood the applicable penalties, namely "a term of imprisonment of not less than five years, but up to life imprisonment, to be served consecutively of whatever sentence is imposed in count one, and a fine not greater than $250,000, and a term of supervised release of not more than five years[.]" Id. at 44-45.[3]  In addition, Iglesias-Viera was well aware of the advisory United States Sentencing Guidelines:

> MR. MASSUCO LATAIF: In – in the case of Mr. Jesús Iglesias Vera, the United States and the defendant have agree that the calculated guidelines, pursuant to the table in paragraph 7, would be as follows: for 5 to 15 kgs of cocaine, which is the stipulated amount between the parties, there's a base offense level of 32; a plus two enhancement for occurring within the confines of a Public Housing Project; a leadership enhancement of +3; with an acceptance and responsibility of -3, to yield a total offense level of 34.
>
> At a criminal history category of one, it would be a 151 to 188-month range; at a two, it would be 168 to 210-month range, with a consecutive penalty for the violation of 924(c) provision, which is count seven, bringing the total recommendation by the parties of 240 months. That includes the 180 months to be served consecutively by the 60-month term.
>
> THE COURT: Okay.  Before you proceed with the next defendant, --
>
> MR. MASSUCCO LATAIF: Yes, sir.
>
> THE COURT:  – let me ask this particular defendant, Defendant No. 1, Mr. Iglesias Viera:
>
> BY THE COURT:
>
> Q: Sir, you have just listened to the prosecutor summarize the guideline calculations that have been agreed to between you and the government.  Do you understand those guidelines calculations?

---

[3]The description of count seven given during the Rule 11 proceedings was the following: "Count seven alleges that, beginning in or about the year 2005, the exact date unknown, and continuing up until the date of the indictment was returned by the grand jury, in Trujillo Alto, Carolina, and San Juan, District of Puerto Rico, and elsewhere within the jurisdiction of this court, all four of you and other co-defendants as they appear listed, aiding and abetting each other, did knowingly possess firearms and ammunition during and in relation to a drug-trafficking crime as charged in counts one through five of this indictment, which may be prosecuted in a court of the United States, all in violation of Title 18, United States Code, Sections 924(c)(1)(a)(1) and (2)." Id. at 44.

>   A: Yes.
>
>   Q: And were you able to understand your attorney's explanations as to how all of those guidelines calculations apply to the particular factual circumstances of your case?
>
>   A: Yes.

Id. at 46-47. Therefore, Iglesias-Viera had knowledge of the contents of count seven and a clear understanding of the consequences of entering a guilty plea with respect to said count.

Moreover, during the change of plea hearing petitioner explicitly admitted his possession of firearms in relation to a drug-trafficking offense:

>   Q: Do you admit that you, during the period of the offense, that is, at some point between the year 2005 and the year that the indictment was returned, that is, on November of 2007, you possessed firearms in relation to this drug trafficking offense in count one, the conspiracy charge?
>
>   A.  I didn't necessarily possess firearms.
>
>   THE COURT: Counsel, do you wish to –
>   (Counsel and Defendant confer).[4]
>
>   THE WITNESS: Yes.
>
>   THE COURT: Okay.
>
>   THE WITNESS: I do.
>
>   BY THE COURT:
>
>   Q: Well, I want to make sure that you understand my question.
>
>   THE COURT: Let the record reflect that Defendant No. 1 has had an opportunity

---

[4]Petitioner claims that "[d]uring this mini conference counsel told Mr. Igesias [sic] that if did [sic] not become complaint [sic] very quickly he would receive two life sentences, and 'die in prison'". (Docket No. 1 at 6-7). Petitioner's present allegations are incongruent with his assertions that he was satisfied with his legal representation (Docket No. 1090 at 6 in case 07-488; Docket No. 2126 at 24 in case 07-488 (ADC)) and with his wish, stated towards the end of the Rule 11 colloquy, that he wanted to enter a guilty plea as to counts one and seven of the indictment. (Docket No. 2126 at 74 in case 07-488).

– Mr. Iglesias Viera has had an opportunity to confer with his attorney. I'll repeat my question.

Q: Do you admit that, between this period of time that is being charged, at some point between the year 2005 and November of 2007, you possessed firearms in relation to the drug trafficking offense that appears in count one of the indictment, the conspiracy charge, yes or no?

A: Yes.

...

Q: Do you admit that you committed this offense knowingly, in other words, not by accident or by mistake, but rather fully aware of what you were doing?

A: Yes.

...

Q: Do you admit that you committed this offense – these offenses willfully, in other words, because you wanted to do so, not because anybody forced you or required you to do so?

A: Yes.

...

Q: And, particularly addressing count seven, since the same explicitly addresses aiding and abetting, do admit [sic] that you were helping each other in knowingly possessing firearms in relation to the drug trafficking crime that appears in count one of the indictment?

A: Yes.

Id. at 71-73.

Petitioner's answers to the court's questions during the change of plea hearing contrast with his present claim that the "plea of guilty to count seven of the indictment was merely a pro forms act...." His guilty plea as to count seven was knowingly, voluntarily and intelligently made. Thus, petitioner's contention regarding count seven also lacks merit.

**IV.     Whether the sentence and judgment should be set aside or corrected due to petitioner's lack of fluency in the English language.**

Iglesias-Viera argues that he is not bilingual and that he does not know or understand the English language. (Docket No. 1 at 6). At the outset, both at the change of plea hearing and at the sentencing hearing Iglesias-Viera was provided with the services of a court interpreter. (Docket No. 2126 at 1 in case 07-488 (ADC); 2346 at 2 in 07-488 (ADC)). More importantly, however, as previously mentioned defense counsel advised the court that he had translated to Iglesias-Viera in Spanish the indictment and the plea agreement. (Docket No. 2126 at 22-23 in case 07-488 (ADC)). Once again, petitioner's argument does not hold water.

**V.     Whether petitioner's sentence and judgment should be set aside or corrected due to defense counsel's failure to file a notice of appeal regarding count seven of the indictment.**

Iglesias-Viera was sentenced, taking into account a criminal history category of III, to 248 months of imprisonment (188 months as to count one and 60 months as to count seven, with corresponding supervised release terms of 10 and 5 years). (Docket No. 2346 at 12 and 15-16 in case 07-488 (ADC)). Since the parties had not stipulated Iglesias-Viera's criminal history category, the sentence imposed was consistent with the terms and conditions of the plea agreement. (Docket No. 1090 at 5 in case 07-488 (ADC)).[5]

Furthermore, the plea agreement contains a waiver of appeal clause. Id. at 10. At the change of plea hearing, this clause was brought to the attention of Iglesias-Viera:

Q: Do you understand that your plea agreements contain a waiver of appeal clause?

---

[5] Even though the plea agreement recommends 180 months as to count one, since the defendant turned out to be a criminal history category III and no criminal history was stipulated between the parties, a sentence of 188 months as to count one is essentially the lower end of the applicable sentencing guideline range for a total base offense level of 34.

> A: Yes.
>
> ...
>
> Q: Do you understand that, if the court accepts this agreement and sentences according to its terms, conditions, and recommendations, you'll be waiving and surrendering you right to appeal the judgment and sentence in this case?
>
> A: Yes.
>
> ...
>
> Q: Were you able to discuss with your respective attorneys the implications of having this waiver of appeal clause in your plea agreements?
>
> A: Yes.

(Docket No. 2126 at 65 in case 07-488 (ADC)). Petitioner argues that his attorney failed to file a notice of appeal regarding count seven. The sentence imposed as to count seven, however, was identical to the recommendation contained in the plea agreement, namely 60 months. Therefore, petitioner waived his right to appeal the sentence regarding count seven.[6]

## VI. Petitioner's claims of insufficient evidence

Iglesias-Viera argues that the indictment "fails to state an offense because there is no evidence identifying Mr. Iglesias, i.e., no elements relating to him...." (Docket No. 1 at 9). Petitioner, however, admitted all the elements of the offenses during the change of plea hearing:

> Q: Do you admit that you conspired and agreed with others and the other individuals listed in counts one and seven of the indictment to possess with intent to distribute cocaine, and that you did this in a knowingly and willful manner?
>
> A: Yes.
>
> ...
>
> Q: Do you admit that this offense was committed with [sic] a 1,000 ft. of a Public Housing Project, the Covadonga Public Housing Project, and/or a Headstart

---

[6] At the sentencing hearing, the court found the presentence investigation report guideline calculations to be adequate. (Docket No. 2346 at 12 in case 07-488 (ADC)). Iglesias-Viera presented no objections to the presentence report. (Docket No. 2346 at 3).

> program?
>
> A: Yes.
> ...
>
> Q: Do you admit that, between this period of time that is being charged, at some point between the year 2005 and November of 2007, you possessed firearms in relation to the drug trafficking offense that appears in count one of the indictment, the conspiracy charge, yes or no?
>
> A: Yes.
> ...
>
> Q: ... [D]o [you] admit that you were helping each other in knowingly possessing firearms in relation to the drug trafficking crime that appears in count one of the indictment?
>
> A:  Yes.
> ...
>
> Q: Do you admit that this conspiracy involved at least somewhere between five and fifteen kilograms of cocaine?
>
> A: Yes.
> ...
>
> Q: Do you admit that you were leaders of this drug-trafficking organization?
>
> A: Yes.
> ...

(Docket No. 2126 at 70-74 in case 07-488 (ADC)).

In light of his clear answers to the question posed, petitioner may not now backpedal by arguing that the government lacked evidence to prove his guilt beyond reasonable doubt.  At the Rule 11 colloquy, Iglesias-Viera was clearly explained, and he understood, that "during a change of plea hearing, the defendant waives several constitutional rights, including that of a jury trial, thus disposing of the case simply by your own admission of guilt." (Docket No. 2126 at 26-27 in case 07-488 (ADC)).  Moreover, Iglesias-Viera was warned about the consequences of entering

a guilty plea:

> Q: Do you understand that, once you enter a guilty plea, you're going to be found guilty without a trial, and that you're not going to be presumed innocent anymore as to those counts to which have pled guilty to?
>
> A.  Yes.
> ...
>
> Q: Do you understand that, if you plead guilty and your plea is accepted, <u>you'll be waiving any possible challenge to the government's evidence as to the issue of whether you're guilty or not</u>?
>
> A: Yes.

(Docket No. 2126 at 38 in case 07-488 (ADC)) (emphasis added).

In sum, Iglesias-Viera's claim regarding the insufficiency of the evidence are inapposite at this juncture of the proceedings. The court "will not permit a defendant to turn his back on representations to the court merely because it would suit his convenience to do so." <u>United States v. Parrilla Tirado</u>, 22 F.3d 368, 373 (1st Cir. 1994) (quoting 878 F.2d at 1539).

WHEREFORE, for the reasons stated above, it is recommended that petitioner's § 2255 motion be DENIED.

IT IS SO RECOMMENDED.

Any objections to this report and recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt. Failure to timely file specific objections to the report and recommendation is a waiver of the right to review by the district court.

In San Juan, Puerto Rico, this 12th day of October, 2011.

s/Marcos E. López<br>
United States Magistrate Judge